# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| MEGAN PATRICIA GRAYBILL, | CASE NO. 5:20-CV-1658 |
| Plaintiff, | |
| v. | JUDGE DAVID A. RUIZ |
| KILOLO KIJAKAZI, *Acting Comm'r of Soc. Sec.*, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

Plaintiff, Megan Patricia Graybill (Plaintiff), challenges the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security (Commissioner),[1] denying her application for Disability Insurance Benefits (DIB), 42 U.S.C. §§ 416(i), and 423, *et seq*. (Act). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, the Commissioner's final decision is affirmed.

## I. Procedural History

Plaintiff filed her application for DIB on November 6, 2017, alleging a disability onset date of April 1, 2009. (R. 10, Transcript (Tr.) 15). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 121-122). Plaintiff participated in the hearing on September 18, 2019, was represented by

---

[1] Pursuant to Rule 25(d), the previous "officer's successor is automatically substituted as a party." Fed.R.Civ.P. 25(d).

counsel, and testified. (Tr. 30-77). A vocational expert (VE) also participated and testified. *Id*. On October 21, 2019, the ALJ found Plaintiff not disabled. (Tr. 12-25). On June 23, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6). Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 13, R. 15, R. 16).

Plaintiff asserts the following assignments of error: "The ALJ's RFC [residual functional capacity] is contrary to law and not supported by substantial evidence because he did not fully account for the total limiting effects of Plaintiff's multiple sclerosis before her date last insured; and he, without good reasons, rejected the opinions of her treating providers [Dr. Fox and PT Sutliff] and the deterioration of her conditions described in the record generally." (R. 13 PageID#1123).

## II. Evidence

### A. Relevant Medical Evidence

The Court has thoroughly reviewed the pertinent medical records and hearing testimony, but this recitation of the evidence is intended only to serve as a succinct summary of Plaintiff's medical conditions, treatment, and opinions rendered that are directly germane to the assignments of error raised.

   1. **Treatment Records**

Plaintiff acknowledges that the relevant period ranges from the alleged onset date, April 1, 2009, to December 31, 2014, her date last insured (DLI). (R. 15, PageID# 1148). Robert Fox, M.D., began treating Plaintiff for multiple sclerosis (MS) in 2003. (Tr. 386). Plaintiff's MS assessment included "stable examination" in April 2009, but an "MRI show[ed] two new lesions

compared to" a prior MRI. (Tr. 738). Some medications were stopped while Plaintiff was pregnant, according to records in April 2010. (Tr. 714).

During the relevant time period, Plaintiff's treatment records vary, demonstrating periods in which her MS was stable and times in which she was relapsing. Concerning her gait, the record generally shows a progressive decline with periods of improvement. (*See*, *e.g.*, 286, 294, 307, 314, 318, 325-26, 339, 343-44, 598, 619, 673, 681, 703).

### 2. Medical Opinions Concerning Plaintiff's Functional Limitations

Several years after her DLI, on August 18, 2017, physical therapist Matthew Sutliff, PT, completed a Functional Capacity Evaluation (FCE) to assist Plaintiff with her social security disability evaluation. (Tr. 410). Plaintiff did not start using a walker until after her DLI in 2015, but had allegedly used a cane by 2010. *Id*. Plaintiff needed 28.40 seconds to complete a 25-foot walk. (Tr. 413). He concluded as follows:

> I have had the opportunity to work with Megan P Graybill as a Physical Therapist since 3/2012 due to her multiple sclerosis. Megan has typically been resistant to interventions and rehabilitation strategies. She has been vocally angry about her multiple sclerosis **diagnosis** and resistant to many opportunities to help her, such as using assistive devices, exercise interventions, or health psychology. She has carried a demeanor that has prevented her from also seeking necessary services, such as applying for Social Security Disability Insurance (SSDI) over the years. Unfortunately, as her symptoms and severity of impairment have progressed, she is now considering disability as she worries about her financial security. I would argue that her multiple sclerosis has been severe over many years, but her anger and resistance to follow up with some medical advice, including applying for Social Security Disability Insurance (SSDI), has placed her in a position now where she is being denied due to inadequate work credits. *I did not see Megan between 4/30/12 and 3/10/14, but in that time period the severity of her multiple sclerosis progressed from a relatively mild to a severe impairment that meets the Social Security Administrations definitions of disability under the multiple sclerosis* **diagnosis**. A timeline of her functional outcomes is provided below.

(Tr. 415) (italicized emphasis added).

3

Even later, on September 28, 2017, Dr. Fox wrote a letter which stated in its entirety as follows:

> Megan P Graybill is a patient under my care at the Mellen Center for Multiple Sclerosis (ICD10: G35) management since December 2002. When Ms. Graybill was first evaluated 12/2002, she was able to ambulate independently with a normal gait and complete a 25-foot walk unassisted in 3.8 seconds. Ms. Graybill's MS has been active and progressive in nature and she has accrued significant deficits over the time she has been followed at Mellen. *By August of 2008, her gait was unstable, mildly ataxic, and spastic and 25 foot walk time increased to 5.0 sec. By December 1, 2014, her gait had significant[ly] worsened with a 25-Foot Walk time of 7.84 sec with a cane. She has also experienced spasticity in her lower extremities which make ambulation difficult and decreased lower extremity muscle strength. By December 2014, Ms. Graybill was experiencing neurogenic bladder/bowel dysfunction, spasticity requiring botox injections and oral anti-spasticity medications, imbalance/gait abnormality necessitating ongoing physical therapy, neuropathic pain, incoordination and dysmetria, MS fatigue, and cognitive changes. Ms. Graybill has continued accrue additional deficits since 2014.* Her ability to ambulate has declined and she now requires a rollator for ambulation. Her most recent timed 25 foot walk was 19.0 sec (with the rollator) on June 20, 2017. *Having followed Megan since 2002, I confirm that she has been disabled from her MS prior to December 2014.*

(Tr. 386; Exh. 2F) (emphasis added).

**B. Relevant Hearing Testimony**

The ALJ posed the following hypothetical question to the VE:

> Now the first hypothetical individual would be at the sedentary exertional range. She would need the following additional limitations in that she could only occasionally push, pull, or operate foot controls with the bilateral lower extremities; and she would use -- or she would require a cane when ambulating. She could never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch, and crawl. Now, she could frequently perform tasks requiring far acuity. However, she would not be able to perform tasks that require precise near acuity like reading small print. And I'm going to define that as beings smaller than 10-point type size. But there would be no limitations reading an ordinary newspaper print or using a computer. She would not be able to perform tasks that require precise … depth perception like threading a needle, but she would be able, on her own, to avoid ordinary hazards in the workplace such as doors ajar, boxes on the floor, or approaching people or vehicles. Now, she should avoid concentrated exposure to extreme heat as well as bright lights. And I'm going to define that as being brighter than the typical office

setting. And she would need to avoid all exposure to hazards such as unprotected heights, moving mechanical parts, and the operation of motor vehicles.

(Tr. 60-61).

The VE testified that such an individual could perform the sales manager job as generally performed in the national economy per the Dictionary of Occupational Titles (DOT), but not as she actually performed it. (Tr. 61-62). The VE testified such a job would not be affected by the addition of the ability to "only frequently handle and finger with the bilateral upper extremities." (Tr. 63). The VE also identified several jobs that such an individual could perform: addresser, DOT 209.587-010 (sedentary, unskilled) with 11,000 jobs nationally; document preparer, DOT 249.587-018 (sedentary, unskilled) with 47,000 jobs nationally; and film, touch-up inspector, DOT 726.684-050 (sedentary, unskilled) with 51,000 jobs in the national economy. (Tr. 62). The jobs were a representative sample and not an exhaustive list. *Id*. When the ALJ inquired as to the impact of a limitation to "only frequently handle and finger with the bilateral upper extremities," the VE testified that such an individual could perform Plaintiff's past job as a sales manager, as well as the document preparer and addresser jobs. (Tr. 63). The film touch-up inspector job would be eliminated, but the VE indicated that job could be replaced by an order clerk, food and beverage, DOT 209.567-014 (sedentary, unskilled) with 5,000 jobs nationally. *Id*. Lastly, the VE testified that an addition of a walker or similar type device to ambulate would eliminate past relevant work and all other jobs as well. (Tr. 65).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when

she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2014.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of April 1, 2009 through her date last insured of December 31, 2014 (20 CFR 404.1571 *et seq*.).
>
> 3. Through the date last insured, the claimant had the following severe impairments: multiple sclerosis; and bilateral optic neuritis, myopia of both eyes and regular astigmatism (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: occasionally push/pull/operate foot controls with the bilateral lower extremities, and would require a cane when ambulating; never climb ladders, ropes, and scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant can frequently handle and finger with the bilateral upper extremities. She can frequently performs [sic] tasks requiring far acuity, but cannot perform tasks requiring precise near acuity like reading small print (smaller than 10-point type size), however she has no limitations reading newspaper print or using a computer. She cannot perform tasks that require precise depth perception like threading a needing, but she can avoid on her own ordinary hazards in the workplace such as boxes on the floor, doors ajar, and approaching people or vehicles. The claimant should avoid concentrated exposure to extreme heat and bright lights (brighter than typical office setting), and avoid all exposure to hazards such as unprotected heights, moving mechanical parts, and the operation of vehicles.
>
> 6. Through the date last insured, the claimant was capable of performing past relevant work as a Manager, Sales. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> 7. The claimant was not under a disability, as defined in the Social Security Act, at any time from April 1, 2009, the alleged onset date, through December 31, 2014, the date last insured (20 CFR 404.1520(f)).

(Tr. 17, 19, 23, 25).

7

### V. Law and Analysis

**A. Standard of Review**

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignment of Error**

In her sole assignment of error, Plaintiff contends that the ALJ erred by rejecting the "medical opinions" of physical therapist Sutliff and Dr. Fox, asserting, without any meaningful explanation, that these opinions were inconsistent with the RFC.[2] (R. 13, PageID# 1135-1143).

---

[2] Plaintiff is vague about which specific opinions of Dr. Fox and PT Sutliff the ALJ unreasonably rejected.

8

The Court construes Plaintiff's brief as referencing the above quoted 2017 letter written by Dr. Fox and the 2017 FCE completed by physical therapist Sutliff. (R. 10, Tr. 386 & 415).

The Commissioner argues that these opinions are not "medical opinions" as defined by 20 C.F.R. § 404.1513(a)(2)). (R. 15, PageID# 1157-1160). In her reply brief, Plaintiff asserts the Commissioner's argument—that these opinions are not "medical opinions"—constitutes an impermissible new post-hoc rationale. (R. 16).

**1. Standard for Evaluating Medical Opinions**

It is undisputed that Plaintiff filed for benefits on November 6, 2017 (R. 13, PageID# 1123), several months after new regulations went into effect on March 27, 2017, which altered the standard for evaluating evidence, including medical opinion evidence. The revised regulations explicitly delineate five categories of evidence: (1) objective medical evidence; (2) medical opinion; (3) other medical evidence; (4) evidence from nonmedical sources; and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a).[3] Most relevant to the case at bar is the operative definition of a "medical opinion," which is as follows:

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: ...
>
> > (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching,

---

[3] The regulations define objective medical evidence as "medical signs, laboratory findings, or both," while "other medical evidence" excludes "objective medical evidence or a medical opinion," and includes judgments about the nature and severity of a patient's impairments, their medical history, clinical findings, diagnosis, prescribed treatment, or prognosis. 20 C.F.R. § 404.1513(a)(1) & (3). Evidence from nonmedical sources is largely self-explanatory, while a prior administrative medical finding is a finding, "other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review." 20 C.F.R. § 404.1513(a)(4) & (5).

9

>handling, stooping, or crouching);
>
>(ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, coworkers, or work pressures in a work setting;
>
>(iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
>(iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2). The regulations explicitly state that "[w]e evaluate evidence we receive *according to the rules pertaining to the relevant category of evidence.*" *Id*. (emphasis added).

Plaintiff's entire argument is predicated upon the assumption that the 2017 letter written by Dr. Fox and the 2017 FCE completed by physical therapist Sutliff constitute "medical opinions," as Plaintiff asserts the ALJ's analysis failed to comport with 20 C.F.R. § 404.1520c. (R. 13, PageID# 1135-1136). Section 404.1520c, by its express language, only applies to the consideration of "medical opinions and prior administrative medical findings." As the Commissioner correctly argues, a medical opinion by definition is a statement about what a claimant can still do, and the limitations and restrictions in her ability to perform the physical, mental, or other demands of work, or to adapt to environmental conditions. (R. 15, PageID# 1157, citing 20 C.F.R. § 404.1513(a)(2)).

Neither Dr. Fox nor PT Sutliff identified any specific "impairment-related limitations or restrictions" with respect to Plaintiff's ability to perform the physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or

crouching) for the *relevant* time period between April 1, 2009, and December 31, 2014. Although the sources mention findings like ataxic gait, decreased strength, and gradually slower walk times over the years, neither of their opinions can reasonably be construed as assessing any *specific* limitation with respect to Plaintiff's ability to walk during a workday. Consequently, the Court agrees that the opinions in question are not "medical opinions" and the requirements of section 404.1520c, which set forth how the Commissioner will "articulate" her "consideration of medical opinions" are simply inapplicable.

To be clear, however, the ALJ did not ignore these opinions, but offered the following consideration of them:

> Dr. Robert Fox, MD completed a medical source statement on behalf of the claimant in September 2017. Dr. Fox determined that prior to December 2014 she was disabled by her multiple sclerosis. In August 2008, her gait was unstable, mildly ataxic, and spastic. Her 25 feet walk time increased to 5 seconds. Her symptoms included bladder/bowel dysfunction, spasticity, neuropathic pain, coordination, fatigue and cognitive changes (Exhibit 2F). I do not find the opinion persuasive, as it was not consistent with treatment notations prior to the claimant's date last insured. The claimant was noted to be independent in activities of daily living, drove independently, demonstrated full motor strength in the upper and lower extremities, exercised at the gym three times per weeks, and only noted fatigue with moderate activity.
>
> Matthew H. Sutliff, PT completed a medical source stated on behalf of the claimant in August 2017. He stated he did not see the claimant between April 2012 and March 2014, but in that period the severity of her multiple sclerosis progressed from a relative mild to a severe impairment that meets the Social Security Administration definition under the multiple sclerosis diagnosis (Exhibit 3F, 27). I do not find the opinion persuasive, as he admitted not treating the claimant during that period and opinions as to disability are reserved for the Commissioner.

(Tr. 22-23).

The Court agrees that Dr. Fox's statement—that Plaintiff was disabled prior to December 2014—is an opinion on an issue reserved to the Commissioner. So too is PT Sutliff's opinion

11

that Plaintiff's condition "meets the Social Security Administrations definitions of disability under the multiple sclerosis diagnosis." *See* 20 C.F.R. § 404.1520b. Both sources' statements constitute statements on issues reserved to the Commissioner. Statements that a claimant is disabled, as well as statements about whether or not a claimant's impairment meets or medically equals any listing in the Listing of Impairments are expressly designated as opinions that are "neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(3)(i) & (iv). Moreover, the Commissioner and the ALJs need "not provide any analysis about how [they] considered such evidence in [their] determination or decision, even under § 404.1520c."[4] Thus, Plaintiff's argument that these opinions were insufficiently discussed cannot furnish the basis for a remand.[5]

To be sure, both sources identified an issue related to Plaintiff's ambulatory abilities. While it can be argued that their opinions are consistent with an ambiguous and undefined reduction in ambulatory abilities, the ALJ accounted for rather significant restrictions in this area. Specifically, the ALJ limited Plaintiff to a sedentary level of exertion, which requires no more than two hours of walking in an eight-hour workday.[5] In addition, the ALJ also imposed a

---

[4] To the extent Plaintiff contends that Sutliff's FCE was more than merely a statement on an issue reserved to the Commissioner, the physical findings from that evaluation are largely irrelevant to Plaintiff's present claim because they speak to Plaintiff's abilities in August of 2017 rather the time period at issue ending years earlier in December 2014. Only his opinion that Plaintiff met the listings for MS are specifically related back to the earlier, relevant time period.

[5] "Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. 404.1567(a). "'Occasionally' means occurring from very little up to one-third of the time. Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday." Social

restriction that Plaintiff needed a cane when ambulating. (Tr. 19). As such, the RFC includes restrictive walking limitations. Plaintiff has not pointed to anything in the opinions or treatment notes of either source that unambiguously suggests even this highly reduced level of ambulation was beyond Plaintiff's capabilities between 2009 and 2014.[6]

Finally, Plaintiff's argument—that the Commissioner is precluded from raising the issue of whether an opinion constitutes a "medical opinion" as an impermissible *post hoc* rationale—is rejected. Plaintiff contends the ALJ did not reject the opinions on this basis and unambiguously described them as "medical source statements" and "opinions." (R. 16, PageID# 1165). Plaintiff's argument, however, overlooks the precise language of the regulations that define a "medical opinion." The mere fact that an opinion comes from a medical source does not render it a medical opinion, nor did the ALJ's use the term "medical opinion." In fact, the ALJ expressly rejected Sutliff's opinion as it was an issue reserved to the Commissioner.

Further, Plaintiff cites no authority suggesting a reviewing court must construe evidence from a medical source as a "medical opinion" even where an opinion plainly falls outside of that category based on the language of the above cited 20 C.F.R. § 404.1513(a)(2). Indeed, authority does exist to refute Plaintiff's position. *See, e.g.*, *L.A.M. v. Kijakazi*, Case No. 21-cv-00983-NYW, 2022 U.S. Dist. LEXIS 139968, at *34 (D. Colo. Aug. 4, 2022) ("Because Dr. Costantini's general observations about Plaintiff's complaints of pain and appearance do not discuss Plaintiff's limitations or abilities, they are not considered 'medical opinions' [and] the

---

Security Ruling (SSR) 83-10, 1983 WL 31251 at *5 (S.S.A. 1983).

[6] Because the analytical requirements of 20 C.F.R. § 404.1520c are inapplicable as the proffered opinions of Dr. Fox and Sutliff do not meet the definition of medical opinions, Plaintiff's contention that the ALJ's decision did not follow the correct sequence of analysis prescribed in section 404.1520c is moot.

ALJ was not required to consider the supportability and consistency of these observations under 20 C.F.R. § 404.1520c, contrary to Plaintiff's suggestion."); *Lucas v. Comm'r of Soc. Sec.*, No. 6:21-cv-1836 DAB, 2022 U.S. Dist. LEXIS 130667, at *9 (M.D. Fla. July 22, 2022) (rejecting a claimant's argument that the ALJ erred by failing to address the factors of "supportability" and "consistency" where the opinion at issue "was not a 'medical opinion,' which is 'a statement from a medical source about what [the claimant] can still do despite [his/her] impairments(s)' and whether the claimant has any functional limitations or restrictions regarding certain enumerated abilities.'"); *Stephanie Beth D. v. Kijakazi*, No. 20-2622-JWL, 2022 U.S. Dist. LEXIS 71028, at *8 (D. Kan. Apr. 18, 2022) (rejecting the claimant's contention that the Commissioner' argument—that the opinion of a certain physician was not a "medical opinion"—was an impermissible post hoc rationale and agreeing with Commissioner that the disputed opinion did not qualify as a "medical opinion").

Therefore, plaintiff's sole assignment of error is not well taken.

## VI. Conclusion

For the foregoing reasons, the Commissioner's final decision is affirmed.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States District Judge

Date: September 27, 2022